FILED BY _____ D.C.

05 OCT 12 AM 7: 50

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ALBERT RHEA and          )
GARY SCHOONOVER          )
                         )
     Plaintiffs,         )
                         )
v.                       )
                         )        No. 04-2254 Ml/V
DOLLAR TREE STORES, INC.,)
JIM STEPHENS, AND STEVE  )
McDONIEL,                )
                         )
     Defendants.         )
                         )

---

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendants' Motion for Summary Judgment, filed July 11, 2005. Plaintiffs filed a response in opposition on August 26, 2005, and a memorandum of law in opposition on August 31, 2005. Defendants filed a reply on September 22, 2005. For the following reasons, the Court grants in part and denies in part Defendants' motion for summary judgment.

## I.   Procedural History and Relevant Background

Plaintiffs Albert Rhea ("Rhea") and Gary Schoonover ("Schoonover") filed their Original Complaint on April 12, 2004, asserting claims for unlawful discrimination based on sexual orientation under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Tennessee Human Rights Act

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  10-12-05

106

("THRA"), and for defamation, intentional economic harm, breach of contract, retaliatory discharge, and civil conspiracy. Plaintiffs filed an Amended Complaint on September 7, 2004, alleging discrimination on the basis of sex.[1]  Defendants moved to dismiss the complaint on June 25, 2004, and the Court entered an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss on February 2, 2005.[2]

Plaintiffs allege the following facts.  Plaintiffs began working for Defendant Dollar Tree Stores, Inc. ("Dollar Tree") in April 2003.  Plaintiffs were hired and supervised by Donna Carlo ("Carlo").  During their employment, Plaintiffs allege Carlo created a hostile work environment and discriminated against Plaintiffs on the basis of Plaintiffs' sex and gender non-conforming behavior and appearance.  In particular, Carlo made numerous derogatory statements regarding Plaintiffs' sex and

---

[1] The Amended Complaint also contains additional factual allegations.

[2] The Court's order dismissed all of Plaintiffs' claims against Defendant Carlo; the Title VII claims against Defendants McDoniel and Stephens; and the claim against McDoniel under the THRA.  Additionally, the Court dismissed Plaintiffs' Title VII and THRA sexual orientation claims; breach of contract; civil conspiracy, and intentional economic harm claims.  The Court denied Defendants' motion to dismiss Plaintiffs' sex stereotyping claim under Title VII and the THRA against Defendant Dollar Tree. It also denied Defendants' motion to dismiss Plaintiffs' THRA claim against Defendant Stephens and Plaintiffs' state law defamation and retaliatory discharge claims.

gender non-conforming behavior and appearance.[3]  Carlo also informed other Dollar Tree employees and higher management that Rhea was a troublemaker, thief, and not trustworthy.

According to Plaintiffs, they reported the offending conduct to Dollar Tree District Manager, Defendant Jim Stephens ("Stephens"), Dollar Tree Regional Manager, Defendant Steve McDoniel ("McDoniel"), and Dollar Tree corporate officers without success.  Plaintiffs allege that Stephens and McDoniel tacitly approved such conduct or took adverse employment action against Plaintiffs including: transfers to other stores; reductions in pay, hours, and responsibilities; and constructive or actual termination.

After Plaintiffs raised concerns regarding the offending conduct with Stephens and McDoniel, Schoonover was promoted to assistant store manager.  Plaintiffs allege that following his promotion, Carlo told Schoonover that he needed to keep his mouth

---

[3] In particular, Plaintiffs allege Carlo made the following statements: "You got a hair cut.  Your [sic] looking more like a man now."; telling Plaintiff Schoonover "Oh, your [sic] trying to copy me," after learning he bleached his hair; stating "I might know somebody I can set you up with," "For a couple of gay guys, you do a good job," "I've got a valium if you need to calm down," and "For a couple of gay guys, you're okay."; commenting in front of several other people that Plaintiff Rhea "gripes worse than any bit** there was."; telling others when she first hired Plaintiffs that she "hired two new ones.  They're half and half. They're actually guys, but . . ."; commenting, with respect to lifting boxes, that "I think he might be scared he will break a nail."; and stating at an employee meeting "My name is Donna and I am the only bitch here. Tomorrow (to Rhea), you can be a bitch."  (Pls.' Am. Compl. ¶ 12.)

shut about sexual harassment if he wanted to keep his job.  After
Rhea was transferred to another store, Carlo allegedly told the
manager of that store that Rhea was "queer," "a bitch," and that
he was not trustworthy.  According to the Amended Complaint, Rhea
then complained to Stephens, who told Rhea that he would "never
hold another key position with this company."   Stephens also
then told the store manager to cut Rhea's hours.

     Plaintiffs allege that despite their awareness of the
hostile work environment created by Carlo, Stephens and McDoniel
did not take any corrective action and tacitly approved Carlo's
conduct.  Plaintiffs allege that Stephens helped create the
hostile work environment when he told Carlo that Rhea needed to
shave because he was looking too much like a man.  Despite
Plaintiffs' repeated complaints to Stephens, McDoniel, and Dollar
Tree's Human Resources Department, no corrective action was
taken.

## II.  Standard of Review

     Under Federal Rule of Civil Procedure 56(c), summary
judgment is proper "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex
Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the

-4-

movant has met its initial burden of "demonstrat[ing] the absence
of a genuine issue of material fact," Celotex, 477 U.S. at 323,
and the nonmoving party is unable to make such a showing, summary
judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353
(6th Cir. 1989).  In considering a motion for summary judgment,
"the evidence as well as all inferences drawn therefrom must be
read in a light most favorable to the party opposing the motion."
Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir.
1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986).

     When confronted with a properly-supported motion for summary
judgment, the nonmoving party "must set forth specific facts
showing that there is a genuine issue for trial."  Fed. R. Civ.
P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159
F.3d 246, 250 (6th Cir. 1998).  A genuine issue of material fact
exists for trial "if the evidence [presented by the nonmoving
party] is such that a reasonable jury could return a verdict for
the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986).  In essence, the inquiry is "whether the
evidence presents a sufficient disagreement to require submission
to a jury or whether it is so one-sided that one party must
prevail as a matter of law."  Id. at 251-52.

## III. Analysis

Defendants move for summary judgment on all of Plaintiffs' claims.  Specifically, Defendants move for summary judgment on the threshold matter of whether Plaintiffs were discriminated against "because of . . . sex" under the meaning of Title VII. They also move for summary judgment on Plaintiffs' hostile work environment and disparate treatment claims under Title VII and the THRA.  Finally, they move for summary judgment on Plaintiffs' state law claims of retaliatory discharge and defamation.  The Court will address each argument in turn.

### A. Title VII Claims

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  The Supreme Court held in Price Waterhouse v. Hopkins that "sex" discrimination under Title VII bars gender discrimination, including discrimination on the basis of sex stereotypes.  490 U.S. 228, 250-51 (1989); see Smith v. City of Salem, 378 F.3d 566, 571 (6th Cir. 2004)(stating Price Waterhouse "held that Title VII's prohibition of discrimination 'because of . . . sex' bars gender discrimination, including discrimination based on sex stereotypes . . . .")  As Price

-6-

Waterhouse made clear, "Title VII does not permit an employee to be treated adversely because his or her appearance or conduct does not conform to stereotypical gender roles." Doe v. City of Belleville, 119 F.3d 563, 580 (7th Cir. 1997), vacated and remanded on other grounds, 523 U.S. 1001 (1998). A man who is harassed "because his voice is soft, his physique is slight, his hair is long, or because in some other respect he exhibits his masculinity in a way that does not meet his coworkers' idea of how men are to appear and behave, is harassed 'because of' his sex." Id. at 581.

Defendants contend at the outset that Plaintiffs cannot make out their Title VII claims because they have not established that they were discriminated against on the basis of sex stereotypes. Viewed in the light most favorable to the nonmoving party, however, the Plaintiffs' deposition testimony suggests that they were harassed or discriminated against, in whole or in part, because their supervisor, Donna Carlo, believed that Plaintiffs did not conform to the male gender stereotype. In particular, Carlo called Schoonover and Rhea a "bitch" (Schoonover Dep. at 78, 90, 95); told Rhea that he looked more like a man after Rhea cut his shoulder-length hair (id. at 80); held the door open for Schoonover (id. at 89-90); and stated that Schoonover was afraid of breaking a nail when lifting boxes (id. at 93). Construed in the light most favorable to Plaintiffs, Carlo's statements and

-7-

actions manifest a belief that Plaintiffs did not act, groom themselves, or otherwise conform to sterotypical "male" norms. See Nichols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864, 874 (9th Cir. 2001)(finding co-workers' comments that male plaintiff walked and carried tray like a woman and references to plaintiff as "she" and "her" constituted verbal abuse based on perception that plaintiff did not conform to gender-based stereotypes); City of Belleville, 119 F.3d at 581 (holding that conduct complained of constituted gender stereotyping prohibited under Title VII where coworkers harassed plaintiff "because he wore an earring, a fact that evidently suggested to his co-workers that he was a 'girl' or . . . a 'bitch'").

Defendants note that Rhea testified that he did not believe that he had feminine characteristics or mannerisms and that, in fact, he believes he was discriminated against on the basis of his sexual orientation. (Mem. Support Defs.' Mot. Summ. J. "Defs.' Br." at 5-6.) In particular, Rhea testified that "feminine characteristics would be dressing like a girl, wearing make-up, prissing. No, I don't do those things." (Rhea Dep. 68.) Defendants argue that Rhea's testimony constitutes an admission that he was not discriminated against on the basis of gender non-conforming behavior, and thus, Defendants are entitled to summary judgment on his claims under Title VII. (Defs.' Br. at 6.)

The issue, however, is not how Rhea <u>actually</u> conducted or dressed himself.  The relevant inquiry under a sex stereotyping claim is whether he was discriminated against because he was perceived <u>by others</u> as failing to "act as a man should act," <u>see</u> <u>Nichols</u>, 256 F.3d at 874, or "unacceptably" feminine.  <u>See</u> <u>City of Belleville</u>, 119 F.3d at 581.  Just as the issue in <u>Price Waterhouse</u> was not whether the plaintiff acted "macho" or needed "a course at charm school," the question for the Court in this case is not whether Rhea acted in an effeminate or non-masculine manner.  The relevant inquiry is whether Rhea was harassed based on his supervisor's perception that Rhea acted in a non-masculine fashion.  As set forth above, both Plaintiffs have advanced sufficient evidence to demonstrate the existence of a genuine issue of material fact as to whether they were discriminated against on the basis of sex stereotyping.  Accordingly, Defendants' motion for summary judgment as to Plaintiffs' Title VII claims on this ground is DENIED.

## 1. Title VII Hostile Work Environment Claims Against Dollar Tree

Defendants next argue that they are entitled to summary judgment on Plaintiffs' hostile work environment claims under Title VII.  To prevail on this claim, Rhea and Schoonover must show that (1) they were a member of a protected class; (2) they were subject to unwelcome sexual harassment; (3) the harassment was based on their sex; (4) the harassment unreasonably

interfered with their work performance and created a hostile work
environment; and (5) [the employer] knew or should have known of
the charged sexual harassment and failed to implement prompt and
appropriate corrective action.  Valentine-Johnson v. Roche, 386
F.3d 800, 813-14 (6th Cir. 2004) (citations and internal
quotation marks omitted).

    In order to be actionable, the harassment must "be
sufficiently severe or pervasive [as] to alter the conditions of
[the victim's] employment and create an abusive working
environment."  Id. at 814 (internal citations and quotation marks
omitted).  "In order to evaluate whether an environment is
hostile, [courts] look at the frequency of the discriminatory
conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance."
Id.  The Supreme Court has made clear that in determining whether
alleged harassment is sufficiently severe or pervasive to
constitute an abusive work environment, courts must consider the
totality of the circumstances.  Williams v. General Motors Corp.,
187 F.3d 553, 560 (6th Cir. 1999)(citing Harris v. Forklift
Systems, Inc., 510 U.S. 14, 23 (1993)).  The issue is "not
whether each incident of harassment standing alone is sufficient
to sustain the cause of action in a hostile environment case, but

whether—taken together—the reported incidents make out such

case." <u>Williams</u>, 187 F.3d at 562.

The test for a hostile work environment has both an

objective and a subjective component. <u>Id.</u> at 566. As the

Supreme Court has stated:

> Conduct that is not severe or pervasive enough
> to create an objectively hostile or abusive work
> environment—an environment that a reasonable
> person would find hostile or abusive—is beyond
> Title VII's purview. Likewise, if the victim
> does not subjectively perceive the environment
> to be abusive, the conduct has not actually
> altered the conditions of the victim's
> employment, and there is no Title VII violation.

<u>Harris</u>, 510 U.S. at 21-22; <u>see also</u> <u>Faragher v. City of Boca</u>

<u>Raton</u>, 524 U.S. 775, 788 (1998) (reaffirming objective and

subjective aspects of hostile work environment test).

Applying this standard to the facts before the Court, it is

clear that Plaintiffs have not established that the harassment

unreasonably interfered with their work performance or created a

hostile workplace environment. Rhea testified that he objected

to Carlo's statements that "for a couple of gay guys, they're ok"

because it was not "Donna's business to go and tell another store

about my personal life. That should have been my business to

tell them if I wanted them to know." (Rhea Dep. at 66-67.) When

asked to explain what he found offensive about being called a

"bitch" by Carlo, Schoonover responded:

-11-

A. The way that she used it. . . .As in using
it as a pronoun instead of an adjective or a
verb or as being a bitch, you know, at the
time.   Like you can bitch about that later, you
know, that's just a general statement to me.
But as just quit being a bitch is something
different or you're just a bitch.

Q. And what was it about being referred to as a
bitch in particular that you found
discriminatory or offensive?

A. Being told in front of customers and
employees, other employees.

Q. Okay.  Is there anything about the term
itself, bitch, that you found particularly
offensive?

A. Like I said, you know, instead of being
called by my name, my given name, and referred
to as that bitch or so forth.

Q. Did you think being called bitch by Donna
Carlo was related to your sexual orientation?

A. Being that she knew I was – that I was gay
to begin with, at time, yeah.

(Schoonover Dep. at 78-79)(emphasis added).  Schnoonover also

testified that he found Carlo's comment that "for a couple of gay

guys, you do a good job" offensive because it "was on the sales

floor in front of customers" and because it "referred to his

sexual orientation."  (Id. at 84.)  In addition, Schoonover

testified that he was offended by Carlo's statement that she had

a Valium "if you need to calm down" because he does not do drugs,

-12-

and he thought it was wrong of her to offer drugs to him.  (<u>Id.</u> at 85-86.)

    None of these statements is "sufficiently severe or pervasive to <u>alter the conditions of [the victim's] employment</u> and create an abusive working environment." <u>Valentine-Johnson</u>, 386 F.3d at 814 (internal citations and quotation marks omitted)(emphasis added).  The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." <u>Faragher</u>, 524 U.S. at 788 (finding that offhand comments and isolated incident do not constitute discriminatory changes in the terms and conditions of employment).  There is also no evidence to suggest that Plaintiffs "subjectively perceive[d] the environment to be abusive." <u>Harris</u>, 510 U.S. at 21.  Rather, Plaintiffs testified to the effect that they were merely offended, annoyed, or embarrassed, and they have put forward no other evidence to show that Carlo's comments were "egregious enough to alter the conditions of [Plaintiffs'] employment." <u>Walker v. Nat'l Revenue Corp.</u>, 43 Fed. Appx. 800, 804 (6th Cir. 2002).

    On this record, the Court concludes that no genuine issue of material fact remains as to whether Plaintiffs were subjected to harassment that unreasonably interfered with their work performance and created a hostile work environment.  Plaintiffs have failed to satisfy either the objective or subjective

component of the hostile work environment test.  Accordingly, the
Court GRANTS summary judgment to Defendants on this claim.

### 2.  Title VII Disparate Treatment Discrimination Claims Against Dollar Tree

Defendants next argue that they are entitled to summary
judgment on Plaintiffs' disparate treatment discrimination claim.
The Supreme Court has recognized two distinct types of Title VII
employment discrimination: "disparate treatment" and "disparate
impact."  Huguley v. General Motors Corp., 52 F.3d 1364, 1370
(6th Cir. 1995) (citing International Bhd. Of Teamsters v. United
States, 431 U.S. 324, 335-36 n.15 (1977)).  To make out a
disparate treatment claim, a plaintiff must show that the
employer treats some employees less favorably than others on the
basis of their sex; to do this, the plaintiff must show
discriminatory motive.  Id.  Plaintiff's proof can be established
directly or it can be inferred based on a prima facie showing of
discrimination.  Id.  To establish a prima facie case of sex
discrimination under a disparate treatment theory, Rhea and
Schoonover must show that: (1) they were members of a protected
class; (2) they were subject to an adverse employment action; (3)
they were qualified for the job; and (4) for the same or similar
conduct, they were treated differently from similarly situated
employees outside of their protected class.  Perry v. McGinnis,
209 F.3d 597, 601 (6th Cir. 2000).

-14-

### a. Schoonover's Claim

Defendants contend that Schoonover has failed to make out a prima facie case of disparate treatment discrimination because his transfer from one Dollar Tree store to another does not constitute an adverse employment action.  An adverse employment action is a "materially adverse change in the terms and conditions" of employment.  Smith, 378 F.3d at 575 (quoting Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999)).  A "bruised ego, a mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action."  Id. (citation and quotation omitted).  Examples of an adverse employment action include "firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation."  Id. at 575-76 (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).  Notably, job reassignments without changes in salary or changes in job responsibilities "do not ordinarily constitute adverse employment decisions in employment discrimination claims."  Kocsis v. Multi-Care Mgt., 97 F.3d 876, 885 (6th Cir. 1996).

Schoonover testified that he was "looking for a different store to go to when human resources mentioned it" and that he "did want to go to a different store."  (Schoonover Dep. at 64.)

-15-

He also testified that when he was transferred from the Dollar Tree store on Poplar to the location on Shelby Drive, his rate of pay did not change, the responsibilities of his job as assistant manager did not change, and that he remained at that location for two to three months until he was terminated.[4]  (Id. at 64-65.)

Schoonover argues, however, that he "was transferred to a store [to] which he did not want to be transferred." (Pl.'s Mem. Law Opp. Defs.' Mot. Summ. J. at 11.)  In support, Schoonover points to his testimony that he was unhappy with the store to which he was transferred.  (Schoonover Dep. at 124.)  Schoonover's discontent with the store location, however, is insufficient to constitute an adverse employment action under Title VII.  When asked if he was "glad to be transferred to another store," Schoonover replied, "It was further out than the area in which I had requested."  (Id. at 64.)  Later in the deposition, Schoonover stated that "store location wise," he was

---

[4] Termination, of course, constitutes an adverse employment action, Smith, 378 F.3d at 575-76, and Schoonover testified that "the only thing that was done to [him] in retaliation was [his] discharge or termination," which took place after his transfer.  (Schoonover Dep. at 130-31).  He claims, however, that he was terminated in retaliation for "taking off work the day for . . . surgery and the store manager having it in writing that I needed that specific day off and still putting me on schedule for seven days that week, and coming back to work the day after the surgery and the district manager letting me go."  (Id. at 131.)  Since Schoonover did not testify that his discharge had anything to do with discrimination based on sex stereotyping, and he has put forward no additional evidence linking the two, the Court's analysis of Schoonover's disparate treatment claim focuses on his transfer from one Dollar Tree store location to another.

-16-

not satisfied with the transfer.  (Id. at 124.)  Employment
actions that result in "mere inconvenience" are not considered
"adverse" under the meaning of Title VII.  Mitchell v. Vanderbilt
Univ., 389 F.3d 177, 182 (6th Cir. 2004)(citation omitted).  "The
Sixth Circuit has consistently held that de minimis employment
actions are not materially adverse and, thus, not actionable."
Id.

     On this record, a jury could not reasonably find that
Schoonover's transfer was anything more than a mere
inconvenience.  Since Schoonover has therefore failed to satisfy
one of the requisite elements of a disparate treatment
discrimination claim under Title VII, Defendants' motion for
summary judgment on his claim is GRANTED.

### b. Rhea's Claim

     Defendants do not address Rhea's claim of disparate
treatment discrimination because they claim that Rhea "has no
claim under Title VII because he admits that he was not
discriminated against on the basis of gender non-conforming
behavior."  As discussed above, however, the Court finds that
both Rhea and Schoonover have stated an actionable claim of
discrimination "because of . . . sex" under Title VII under the
theory of gender-based stereotyping set forth in Price

<u>Waterhouse</u>.  Accordingly, the Court DENIES Defendants' motion for summary judgment as to Rhea's claim of disparate treatment discrimination.

## B. Tennessee Human Rights Act Claims

"The stated purpose and intent of the Tennessee Human Rights Act is to provide for execution, within Tennessee, of the policies embodied in the analogous federal anti-discrimination laws." <u>Weber v. Moses</u>, 938 S.W.2d 387, 390 (Tenn. 1996)(citing Tenn. Code Ann. § 4-21-101(a)(1)).  Therefore, claims brought under the THRA are analyzed under the same framework as those under Title VII.  <u>Campbell v. Florida Steel Corp.</u>, 919 S.W.2d 26, 31 (Tenn. 1996)(finding that analysis of hostile work environment and constructive discharge claims "is the same under both the Tennessee Human Rights Act and Title VII of the Federal Civil Rights Act"); <u>see also</u> <u>Gee-Thomas v. Cingular Wireless</u>, 324 F.Supp.2d 875, 881 (M.D. Tenn. 2004) (finding that "the analysis of claims under the THRA is the same as under Title VII").

Section 4-21-311(a) of the Tennessee Human Rights Act provides that "[a]ny person injured by an act in violation of the provisions of this chapter shall have a civil cause of action . . . ."  Tenn. Code Ann. § 4-21-311(a). The Act applies to all Tennessee employers, including private employers with eight or more employees. <u>See</u> Tenn. Code Ann. § 4-21-102(4).  The Act also provides liability for "an individual who aids, abets, incites,

-18-

compels, or commands an employer to engage in" any discriminatory acts or practices. <u>Carr v. United Parcel Serv.</u>, 955 S.W.2d 832, 835 (Tenn. 1997), <u>overruled on other grounds</u>, <u>Parker v. Warren County Util. Dist.</u>, 2 S.W.3d 170 (Tenn. 1999); <u>see</u> Tenn. Code Ann. § 4-21-301(2).

Accordingly, Defendants' motion for summary judgment under the THRA as to both Plaintiffs' hostile work environment claims and Schoonover's claim of disparate treatment against Dollar Tree and Stephens is GRANTED. Defendants' motion for summary judgment as to Rhea's claim of disparate treatment discrimination against Dollar Tree and Stephens is DENIED.

## E. Statutory and Common Law Retaliatory Discharge Claims

Defendants next argue that they are entitled to summary judgment on Plaintiffs' retaliatory discharge claims. They argue that Plaintiffs cannot establish a <u>prima facie</u> case of either common law or statutory retaliatory discharge. Tennessee common law protects employees from being discharged "for refusing to violate a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision." <u>Wooley v. Madison County</u>, 209 F.Supp.2d 836, 845 (W.D. Tenn. 2002)(citing <u>Mason v. Seaton</u>, 942 S.W.2d 470, 475 (Tenn. 1997)). The Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304, "extends the common law to protect employees not only from discharge for failing to participate in violations of clear

-19-

public policy, but also from discharge for refusing to remain
silent about such violations in their workplace." Id.

   To make out a prima facie case of retaliatory discharge
under the TPPA, a plaintiff must show: "(1) the plaintiff's
status as an employee of the defendants; (2) the plaintiff's
refusal to participate in, or to remain silent about, illegal
activities; (3) the employer's discharge of the employee; and (4)
an exclusive causal relationship between the plaintiff's refusal
to participate in or remain silent about illegal activities and
the employer's termination of the employee." Id. at 845 (citing
Hill v. Perrigo of Tenn., No. M2000-02452-COA-R2-CV, 2001 WL
694479, at *3 (Tenn. Ct. App. June 21, 2001); see also Griggs v.
Coca-Cola Employees' Credit Union, 909 F.Supp. 1059, 1063 (E.D.
Tenn. 1995). To make out a prima facie case of retaliatory
discharge under Tennessee common law, the plaintiff must show
that "the employer violated a clear public policy in discharging
an at-will employee." Wooley, 209 F.Supp. at 845 n.3 (citing
Robins v. Flagship Airlines, Inc., 956 S.W.2d 4 (Tenn. Ct. App.
1997)). "Tennessee courts have held that a plaintiff must meet
the requirements under the TPPA in order to establish a common
law claim of retaliatory discharge." Wooley, 209 F.Supp. at 845
n.3 (citations omitted).

   Thus, in order to make out the first element of a prima
facie case of retaliatory discharge under the TPPA and the common

law, Plaintiffs must show that they are Defendants' employees. Individual supervisors, however, are not employers under the TPPA, "even if they have the exclusive authority to hire and fire employees . . . ." Wooley, 209 F.Supp.2d at 845 (granting summary judgment on plaintiff's statutory and common law retaliatory discharge claims against plaintiff's supervisor in his individual capacity). Plaintiffs' employer was Dollar Tree Stores, Inc., not Defendant Stephens and McDoniel. See Guster v. Hamilton County Dept. of Educ., No. 1:02-CV-145, 2004 WL 1854181, at *38-39 (E.D. Tenn Mar. 2, 2004)(holding common law and statutory retaliatory discharge claims can only be maintained against employer, and denying plaintiff's claims against individual supervisors on grounds that the company, and not the supervisors, was plaintiff's employer). Accordingly, Plaintiffs cannot establish a prima facie case of retaliatory discharge under Tennessee common law or the TPPA against Stephens and McDoniel. Defendants' motion for summary judgment on Plaintiffs' retaliatory discharge claims against Stephens and McDoniel, in their individual capacities, is GRANTED.

## 1. Rhea's Claim against Dollar Tree

To establish a retaliatory discharge claim against Dollar Tree, Plaintiffs must demonstrate that they were actually discharged. See Wooley, 209 F.Supp.2d at 845. Defendants contend that Rhea "voluntarily resigned" and was not discharged.

Rhea argues, however, that he did not voluntarily resign but rather was constructively discharged.  A constructive discharge exists if "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Yates v. Acvo Corp., 819 F.2d 630, 636-37 (6th Cir. 1987).  Rhea argues that he was constructively discharged because Stephens transferred Rhea to a "remote location in another town," cut Rhea's salary and "ordered Gustavus to cut Rhea[']s hours."  (Pl.'s Mem. Law Opp. Defs.' Mot. Summ. J. at 12.)  At his deposition, Rhea testified that he gave notice and quit his job out of necessity.  He explained that:

> around the 15th or 20th of January, when I
> realized wintertime and the price of gas, I
> just wasn't making any thing going out [to
> the Dollar Tree store in Millington] two
> days [a] week for 10 hours minus taxes and
> going home with [$]25 $30 paycheck. . .  I
> gave Kaye a notice and told her that I would
> be quitting. . . .

(Rhea Dep. at 124.)  He also testified that he was sent "out to Millington, cutting my hours and cutting my pay" in retaliation for reporting that Carlo and Stephens were "throwing good merchandise away."  (Id.)  Construing the evidence in the light most favorable to Rhea, the Court concludes that a triable issue of fact exists as to whether Rhea was constructively discharged.

Defendants also contend that Rhea's alleged reporting of improperly discarded merchandise was "neither the sole nor a

substantial factor in his employment with Dollar Tree ending."
(Defs.' Br. at 26.)   Rhea testified, however, that he "was
transferred out of that store because they were trying to cover
everything up" and that his transfer was effected as soon as
Carlo learned of Rhea's allegations.   (Rhea Dep. at 67.)   Because
a genuine issue of material fact exists on this issue, the Court
DENIES Defendants' motion for summary judgment as to Rhea's state
statutory and common law retaliatory discharge claim against
Dollar Tree Stores, Inc.

### 2.   Schoonover's Claim against Dollar Tree

Defendants also deny that Schnoonover's report of discarded
merchandise was the sole or a substantial factor in his
discharge.   Schoonover argues in response that "[s]hortly after
the EEOC issued its right to sue letter, Schoonover was
terminated based on 6 write-ups given out over an eight day
period."   (Pls.' Mem. Opp. Defs.' Mot. Summ. J. at 11.)   As
Defendants point out, however, "temporal proximity alone is
insufficient to establish a causal connection for a retaliation
claim."   Little v. B.P. Exploration & Oil Co., 265 F.3d 357, 364
(6th Cir. 2001)(examining Title VII retaliation claim).   A causal
connection based on temporal proximity may only be established
where there is "other evidence of retaliatory conduct."   Id.   In
this case, Plaintiffs have put forward additional evidence of
retaliatory conduct sufficient to establish a genuine issue of

material fact.  In particular, Schoonover testified that he and
Rhea spoke with Chris Nygren in human resources several times
about their allegations that Carlo was discarding good
merchandise, (Schoonover Dep. at 122), and Rhea testified that he
heard Stephens tell Kaye Gustavus, a Dollar Tree store manager,
that Gustavus "really messed things us for us" and that she
"should have lied to Chris Nygren and told her you knew nothing
about it." (Rhea Dep. at 145.)  Viewed in the light most
favorable to the Plaintiffs, the Court concludes that the
evidence is sufficient to create a genuine issue of material fact
as to whether Schoonover was discharged solely or substantially
because of his allegations against Carlo.  Accordingly, the Court
DENIES Defendants' motion for summary judgment on Schoonover's
claim of retaliatory discharge against Dollar Tree.

### F. Defamation

To establish a <u>prima facie</u> case of defamation in Tennessee,
a plaintiff must show that: "1) a party published a statement; 2)
with knowledge that the statement is false and defaming to the
other; or 3)  with reckless disregard for the truth of the
statement or with negligence in failing to ascertain the truth of
the statement." <u>Sullivan v. Baptist Memorial Hosp.</u>, 995 S.W.2d
569, 571 (Tenn. 1999).  To recover damages, the plaintiff must
prove that the allegedly defamatory statements resulted in injury
to the plaintiff's reputation or standing in the community.

-24-

<u>Quality Auto Parts Co. v. Bluff City Buick Co.</u>, 876 S.W.2d 818, 820 (Tenn. 1994).  The statements cannot be simply annoying, offensive or embarrassing; they must constitute a "serious threat to the plaintiff's reputation" and hold the plaintiff up to "public hatred, contempt or ridicule." <u>Stones River Motors, Inc. v. Mid-South Pub'q Co.</u>, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983).

Statements of opinion are actionable "if they imply the allegation of undisclosed defamatory facts as the basis for the opinion." <u>Satterfield v. Bluhm</u>, No. E2003-01609-COA-R3-CV, 2004 WL 833291, at *5 (Tenn. Ct. App. Apr. 16, 2004).  Statements are not actionable if they constitute the "simple expression of opinion based on disclosed or assumed non-defamatory facts, . . . no matter how unjustified and unreasonable the opinion may be or how derogatory it is." <u>Restatement (Second) of Torts</u> § 566.

As an initial matter, it is evident from the Plaintiffs' testimony that they are not claiming that Defendants McDoniel or Stephens defamed them. (<u>See</u> Rhea Dep. at 118; Schoonover Dep. at 108-09.)  Moreover, in their motion papers, Plaintiffs do not dispute that the only allegedly defamatory comments were made by Carlo.  (<u>See</u> Pls.' Resp. Defs.' Stmt. Material Uncontroverted Facts ¶¶ 25, 26.)  Therefore, the only issue before the Court is whether Dollar Tree is liable for the defamatory statements of its employee, Donna Carlo.

-25-

The parties agree Schoonover relies on only four statements
to support his defamation claim: (1) "for a couple of gay guys,
you're okay;" (2) "for a couple of gay guys, you do a good job;"
(3) "he's scared he'll break a nail if he lifts a box or
something;" and (4) that he was "queer."   (Id. at ¶ 26.)
Defendants argue that these are statements of opinion that
reflect truthful underlying facts, and are thus not actionable.
Defendants contend that Carlo's statements that "for a couple of
gay guys," they are "okay" and "do a good job" have two parts.
The first part of the statements, Defendants claim, merely
expresses a true fact: that Plaintiffs are homosexual.   The
second part—that they are okay and do a good job—constitutes
harmless, non-derogatory statements of opinion.   Therefore,
Defendants argue, Carlo's statements are not defamatory.
Similarly, they contend, Carlo's statement that "he's scared
he'll break a nail if he lifts a box or something" expresses an
opinion that is neither false nor defaming.   Finally, Defendants
note that Carlo's statement that Schoonover is queer is "true and
cannot constitute defamation."   (Defs.' Br. at 30).   The Court
agrees with this analysis.

Truthful statements are not defamatory, and Schoonover has
not demonstrated that Carlo's statements of opinion, which are
generally not actionable, "caused a serious threat to his
reputation."   See Stones River Motors, Inc., 651 S.W.2d at 719.

-26-

stores.  So Carlo could not have made these comments with
knowledge that her statements were false, reckless disregard for
the truth of the statement, or with negligence in failing to
ascertain the truth of the statement.

As for Rhea, the parties agree that the only statements upon
which Rhea relies to support his claim of defamation are that:(1)
he was called a "liar;" (2) he was "nothing but a troublemaker;"
and (3) he was not "trustworthy" as an employee.  (Pls.' Resp.
Defs.' Stmt. Material Uncontroverted Facts ¶ 25.)  Defendants
contend that these statements are not defamatory because they
express Carlo's opinions.[5]

One Tennessee court has addressed the issue of whether the
phrase "troublemaker" constitutes a defamatory statement.  It
held that calling someone a "troublemaker" is "not actionable
under either constitutional or common law standards" because it

_____

[5] Defendants limit their argument on Rhea's defamation claim to
the issue of whether or not the statements are defamatory.  For a
claim of defamation to lie, there must also be a publication.  A
"communication of defamatory matter between the agents and
officers of a corporation in the ordinary course of business [is]
not a publication."  Maynard v. Vanderbilt Univ., 1993 WL 156156,
at *7 (Tenn. App. May 14, 1993)(quoting Woods v. Helmi, 758
S.W.2d 219, 223 (Tenn. App. 1988)).  A corporation is not liable
"for the slanderous words spoken by an employee unless the
plaintiff shows that either the employer authorized the speaking
of the slanderous words, or that it would be necessary for an
employee to speak them in the performance of the duty assigned to
the employee, or that the statements had been ratified by the
employer."  Tate v. Baptist Memorial Hosp., No. W1999-00553-COA-
R3-CV, 2000 WL 1051851, at *4 (Tenn. Ct. App. July 28,
2000)(citing Southern Ice Co. v. Black, 189 S.W. 861, 862-63
(Tenn. 1916)).

-27-

"lacks precision and specificity" and "fails to suggest verifiable false facts" about an individual. <u>Butler v. Diversified Energy, Inc.</u>, No. 03A019804CV000146, 1999 WL 76102, at * 3 (Tenn. Ct. App. Jan. 28, 1999). Thus, calling someone a troublemaker is not defamatory. However, calling someone a liar or an untrustworthy employee is sufficiently specific to imply that the victim has committed particular acts that society has determined to be improper. <u>See</u> <u>id.</u>; <u>Weissman v. Sri Lanka Curry House, Inc.</u>, 469 N.W.2d 471, 473 (Minn. App. 1991)(finding use of term "dishonest" defamatory because it implied commission of specific acts or conduct that society found reprehensible). Accordingly, Defendants' motion for summary judgment on Rhea's defamation claim is DENIED.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment on Rhea's and Schoonover's hostile work environment claims under Title VII and the THRA against Dollar Tree; Schoonover's disparate treatment claims under Title VII against Dollar Tree and under the THRA against Dollar Tree and Stephens; Rhea's state law defamation claims against McDoniel and Stephens; and Schoonover's state law defamation claims against all Defendants. The Court DENIES Defendants' motion for summary judgment on Rhea's Title VII and THRA disparate treatment claims against Dollar Tree; Rhea's THRA disparate treatment claim

-28-

against Stephens; Rhea's and Schoonover's state statutory and common law retaliatory discharge claims against Dollar Tree; and Rhea's state law defamation claims against Dollar Tree.

So ORDERED this __11__ day of October, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 106 in case 2:04-CV-02254 was distributed by fax, mail, or direct printing on October 12, 2005 to the parties listed.

---

Melissa Kimberly Hodges
LEWIS FISHER HENDERSON CLAXTON & MULROY
6410 Poplar Ave.
Ste. 300
Memphis, TN 38119

Craig Cowart
LEWIS FISHER HENDERSON & CLAXTON, LLP
6410 Poplar Ave.
Ste. 300
Memphis, TN 38119

William T. Winchester
THE LAW OFFICES OF WILLIAM T. WINCHESTER
2600 Poplar Ave.
Ste. 507
Memphis, TN 38112

Frederick J. Lewis
LEWIS FISHER HENDERSON & CLAXTON, LLP
6410 Poplar Ave.
Ste. 300
Memphis, TN 38119

Honorable Jon McCalla
US DISTRICT COURT