UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 OCT 14 PM 12: 20

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

ALBERT RHEA and )
GARY SCHOONOVER, )
)
Plaintiffs, )
)
v. ) Civil Action No. 04-2254 MlV
)
DOLLAR TREE STORES, INC., )
JIM STEPHENS and STEVE MCDONIEL )
)
Defendants. )

## JOINT PRETRIAL ORDER

### I. JURISDICTION

This action involves claims arising under Title VII of the Civil Rights Act of 1964, as amended; the Tennessee Human Rights Act; and Tennessee common law. Jurisdiction is conferred by virtue of 28 U.S.C. §§ 1331, 1332.

### II. PENDING MOTIONS

Defendants' Motion for Summary Judgment and *motions in limine* remain pending.

### III. SUMMARY OF THE CASE

#### A. Plaintiffs' Summary

Plaintiffs, who are homosexual, began working for Defendant Dollar Tree Stores, Inc. ("Dollar Tree"), at 3430 Poplar Plaza, Memphis, Tennessee 38112, on or about June 13, 2003. The local manager, Donna Carlo ("Carlo"), created a hostile work environment based upon the

1

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 10-14-05



Plaintiffs' sex. Carlo has referred to the Plaintiffs with derogatory names and profane names, some of which are malicious and slang regarding the Plaintiffs' sexual orientation. These names include "queer", "bit**", etc.

Many statements made by Carlo to other store employees and higher management were false, derogatory, and had no basis in fact.

Further, Carlo has threatened to do bodily harm to the Plaintiffs. Carlo has told other Dollar Tree employees, and higher management, that the Plaintiffs were troublemakers, theives, and not trustworthy.

During the course of Plaintiffs' employment, Carlo has also directed Plaintiffs, as well as other employees, to throw away good merchandise. Carlo would then claim it as damaged merchandise, and have room to restock the store with other merchandise.

Plaintiffs reported the facts listed herein above, <u>as well as other facts</u>, to Defendant Jim Stephens ("Stephens"), and Dollar Tree corporate officers, all to no avail. Stephens either took adverse employment action, or approved adverse employment action by other Dollar Tree personnel, against Plaintiffs. The adverse employment action included, but was not limited to, transfers to other stores, reduction in pay, reduction in hours, reduction in responsibilities, and constructive or actual termination.

Stephens was aware of the hostile work environment created by Carlo, including the derogatory names such as "queer", "bit**", etc., and took no action to correct the matter.

Plaintiffs were performing at or above the level of their employer's reasonable expectations, and were subjected to adverse employment action, under circumstances that give rise to an inference of unlawful discrimination based on sex. By making unjustified transfers,

cutting working hours, and other acts, the Defendants have caused the Plaintiffs to suffer economic harm.

The Plaintiffs were subjected to adverse and retaliatory employment action because they reported illegal activity being conducted by Dollar Tree employees with a blind eye being made by higher management.

### B. Defendants' Summary

Plaintiffs Gary Schoonover ("Schoonover") and Albert Rhea ("Rhea") are former employees of Defendant Dollar Tree Stores, Inc. ("Dollar Tree"). Defendant Steve McDoniel ("McDoniel") is a former Region Director for Dollar Tree with responsibility for the Region in which Plaintiffs were employed and a current District Manager. Defendant Jim Stephens ("Stephens") is a former District Manager for Dollar Tree in the District where Rhea was employed by Dollar Tree and where Schoonover was employed prior to his transfer to a store in another District.

Both Schoonover and Rhea allege that they were subjected to hostile work environments at Dollar Tree because they failed to conform to the expected behavior and dress of males. Dollar Tree denies this, and maintains that no actions were ever taken or comments made about Rhea or Schoonover because of their mannerisms or characteristics. Moreover, Dollar Tree denies that the work environments of Schoonover and Rhea were hostile.

Schoonover also claims that Dollar Tree discriminated against him because he failed to conform to sexual stereotypes by transferring him to another store and terminating his employment. Dollar Tree Stores denies this, and maintains that it transferred Shoonover to resolve a conflict between Schoonover and his former manager. Dollar Tree further maintains

3

that it terminated Schoonover's employment because he failed to follow company policy and procedures. Specifically, Dollar Tree maintains that it discharged Schoonover because he failed to follow the company's cash handling procedures, left work without permission, and failed to show up for work or call in on three occasions during a two week period, all in violation of company policy.

Rhea alleges that Dollar Tree discriminated against him because he failed to conform to sexual stereotypes by transferring him to another store, demoting him, and deliberately creating intolerable working conditions as perceived by a reasonable person.. Dollar Tree denies this, and maintains that it did not make the Plaintiff's working conditions intolerable, that Rhea requested that he step down from stock manager to stocker, and that Rhea voluntarily resigned.

With respect to the claims against Mr. Stephens, individually, Rhea alleges that Stephens aided, abetted, incited, commanded, or compelled another to discriminate against Rhea by telling another Dollar Tree employee to cut Rhea's work hours. Stephens denies this claim, and maintains that Rhea's work schedule was consistent with that of other employees in the same position at the same store.

Both Rhea and Schoonover claim that Dollar Tree, Stephens, and McDoniel discharged them in retaliation for complaining that they were being discriminated against because they failed to conform to sexual stereotypes. Defendants deny that Plaintiffs ever complained that they were being discriminated against because they failed to conform to sexual stereotypes, and deny that they retaliated against the Plaintiffs. Specifically, Dollar Tree maintains that it did not terminate Rhea's employment, and that it discharged Schoonover because he violated company policy. Further, Stephens and McDoniel maintain that they did not employ the Plaintiffs and, thus, could

4

not and did not discharge them.

Finally, Rhea and Schoonover claim that the Defendants defamed them. Stephens and McDoniel maintain that they did not make any defamatory statements about the Plaintiffs. Dollar Tree denies that its employees made any defamatory statements about the Plaintiffs, and if any employee of Dollar Tree had made such statements, they were not acting within the scope of their employment with Dollar Tree, and, therefore, Dollar Tree cannot be liable for their actions.

## IV. CONTENTIONS OF THE PARTIES

### A.   Plaintiffs' Contentions

Defendants have created a hostile work environment based upon the Plaintiffs' sex, the Plaintiffs' gender non-conforming behavior and appearance, and sex stereotyping. Defendants, through their managers, agents, and employees, threatened to do bodily harm to the Plaintiffs, some in the presence of Dollar Tree management, as well as referred to the Plaintiffs with derogatory names and profane names, some of which are malicious and slang regarding the Plaintiffs' sex, the Plaintiffs' gender non-conforming behavior and appearance, and sex stereotyping.

Defendants, through their managers, agents, and employees, constantly used language and took actions towards the Plaintiffs regarding their sex, and their gender non-conforming behavior and appearance. Said comments and actions include sex stereotyping. Comments and actions include, but are not limited to:

    a. "You got a hair cut. Your looking more like a man now."

    b. When Schoonover bleached his hair, Carlo stated "Oh, your trying to copy me."

c. "I might know somebody I can set you up with."

d. "For a couple of gay guys, you do a good job."

e. "I've got a Valium if you need to calm down."

f. For a couple of gay guys, you're okay."

g. Holding the door open for them.

h. Rhea "gripes worse than any bit** there was", which was said in front of several other people.

I. When first hiring the Plaintiffs' Carlo told others that she "hired two new ones. They're half and half. They're actually guys, but ..."

j. Regarding lifting boxes, "I think he might be scared he will break a nail."

k. At an employee meeting, "My name is Donna and I am the only bit** here. Tomorrow (to Rhea), you can be a bit**"

Defendants, through their managers, agents, and employees, directed Plaintiffs, as well as other employees, to throw away good merchandise; then would claim it as damaged merchandise.

Defendants, through their managers, agents, and employees, told other Dollar Tree employees, and higher management, that the Plaintiffs were troublemakers, thieves and not trustworthy.

Plaintiffs reported the facts listed herein above, as well as other facts, to Stephens, and Dollar Tree corporate officers, all to no avail. Stephens either took adverse employment action, or approved adverse employment action by other Dollar Tree personnel, against Plaintiffs. The adverse employment action included, but was not limited to, transfers to other stores, reduction in pay, reduction in hours, reduction in responsibilities, and constructive or actual termination.

6

After making their initial complaints to Stephens, Schoonover was promoted to assistant store manager, and then was told if he wanted to keep his job, he needed to keep his mouth shut about sexual harassment. When Schoonover was transferred to another store, the new store manager, Carol Woodard, stated that a pink shirt, that "pink is okay for a queer."

After Rhea was transferred, Defendants, through their managers, agents, and employees, told the manager of the store Rhea was transferred to that Rhea was "queer", "a bit**", etc., and that he was not trustworthy, etc. After complaining again to Stephens, Stephens told Rhea that Rhea would "never hold another key position with this company." Stephens then told the store manager to cut Rhea's hours.

Stephens was aware of the hostile work environment created by Carlo and took no action to correct the matter. Stephens also helped create the environment when he told Carlo that Rhea needed to shave because Rhea was looking too much like a man.

The Plaintiffs repeatedly made complaints to Stephens, and Dollar Tree's human resources department, all to no avail. Stephens didn't return the Plaintiffs' calls, and when seeing the Plaintiffs in a store, they would not talk to the Plaintiffs about their complaints.

Stephens turned a blind eye to hostile and adverse actions, and gave tacit approval of said actions. Stephens never investigated the Plaintiffs' complaints, and in fact, caused the Plaintiffs to have their hours reduced, and placed the Plaintiffs in situations that led to their termination from Dollar Tree.

Dollar Tree's Human Resources office, including Chris Nygren ("Nygren"), merely transferred the Plaintiffs to other locations "to put an end" to the Plaintiffs' complaints, not the harassment itself. Nygren also told Plaintiffs that Carlo had done the same thing to another

7

Dollar Tree employee.

Dollar Tree has created, and allowed to continue either by actions or inactions, a systemic hostile environment that routinely violated the rights protected by Title VII.

### B.     Defendants' Contentions

Defendants contend that Plaintiffs have no basis for claiming that they did not conform to sexual stereotypes, or that they were discriminated against for that reason. Defendants assert that the Plaintiffs really are claiming that they were discriminated against because of their sexual orientation; thus, the Plaintiff's have no basis for claims under Title VII, the Tennessee Human Rights Act, or for retaliatory discharge under Tennessee law. Further, Defendants assert that Plaintiffs failed to utilize the procedures in effect if they felt that they were being discriminated against or were subjected to a hostile environment on the basis of sexual stereotyping.

All Defendants deny that either Stephens or McDoniel made any defamatory statement about either of the Plaintiffs. Dollar Tree denies that any of its employees made any defamatory statements about the Plaintiffs but, even if they did, they were not acting within the scope of their employment with Dollar Tree.

Further, Defendants contend:

1.     That all action taken in regard to Plaintiffs' employment and termination were taken due to legitimate business reasons and not as a result of any unlawful discrimination.

2.     Plaintiffs suffered no emotional injury, mental injury or other damages as a result of any improper action by Defendants.

3.     Plaintiffs cannot establish "malice" or "reckless indifference" and may not, therefore, seek an award of punitive damages.

8

4. Dollar Tree's strong Equal Employment Opportunity policy and effective enforcement procedures are a defense to Plaintiffs' claims of punitive and compensatory damages.

5. Given the totality of the circumstances of this case, an objective, reasonable observer would not deem the words or acts relied upon by Plaintiffs as the basis for their hostile work environment claims to be harassment based on their alleged failure to conform to sexual stereotypes.

6. The alleged acts of harassment were not because of Plaintiffs' alleged failure to conform to sexual stereotypes. Rather, the acts and words relied upon as the basis for Plaintiffs' claims, to the extent they are accurate, were gender neutral.

7. The alleged harassment was not severe and pervasive, it did not have the effect of unreasonably interfering with Plaintiffs' work performance, nor did it create an intimidating, hostile, or offensive work environment.

8. A reasonable person would not have felt compelled to resign, and Rhea did not feel compelled to resign.

9. Plaintiffs cannot establish a causal connection between their alleged protected activity and any adverse employment action.

10. Plaintiffs were not subjected to an adverse employment action when they were transferred to another store.

11. All action taken in regard to Plaintiffs' transfers and/or discipline was taken due to legitimate business reasons and not as a result of any unlawful bias or discrimination.

## V. UNCONTESTED FACTS

1. Rhea and Schoonover, were originally hired in April 2003 as stock employees to work at the Dollar Tree store in Collierville, Tennessee.

2. After approximately one to two weeks, Plaintiffs were transferred to work at the Poplar Plaza Dollar Tree store.

3. Plaintiffs were hired by and supervised at both the Collierville and Poplar Plaza Dollar Tree stores by Donna Carlo, who is a former Dollar Tree Store Manager.

4. Rhea and Schoonover are both homosexual and are in a homosexual relationship with one another.

5. When Rhea was assigned to work at the Poplar Plaza store, he was promoted by Carlo from stocker to Stock Manager and received a pay raise.

6. After approximately four to six months, Schoonover was also promoted by Carlo from stocker to Stock Manager and received a pay raise. Carlo subsequently promoted Schoonover to the position of Assistant Store Manager, and he received another pay raise.

7. After Rhea contacted Keith Jackson in Loss Prevention at Dollar Tree's corporate offices, Chris Nygren investigated Rhea's allegations. Nygren interviewed several employees concerning the allegations.

8. After her investigation, Nygren discussed with Schoonover an option of being transferred to another Dollar Tree store.

9. Once he was transferred to the Southland Mall store as Assistant Store Manager, Schoonover was no longer under the supervision of Carlo or Stephens. He had a new Store Manager and District Manager because the Southland Mall store was in another District.

10

## VI. CONTESTED ISSUES OF FACT

### A. Plaintiffs' Statement of Contested Issues of Fact:

Given the Defendants' 17 motions in limine, and the Defendants attempts to have this mater dismissed on mere technicalities, Plaintiff presumes that all facts in the Amended Complaint not listed herein above as uncontested are contested.

### B. Defendant's Statement of Contested Issues of Fact:

1. Whether Plaintiffs failed to conform to sexual stereotypes.

2. Whether appropriate steps and mechanisms were put in place by Dollar Tree that were reasonably calculated to (a) prevent acts of discrimination and harassment; (b) notify Plaintiffs of the Company's policy regarding reporting perceived or actual harassment and/or discrimination; and (c) correct such actions when properly reported pursuant to this reasonably available method.

3. Whether the frequency, severity and type of conduct alleged by Plaintiffs is actionable as harassment for failure to conform to sexual stereotypes.

4. Whether the environment at Dollar Tree was pervasively and materially hostile toward Plaintiffs because they failed to conform to sexual stereotypes.

5. Did Plaintiffs, as a subjective matter, find the environment at Dollar Tree to be materially and pervasively hostile due to their failure to conform to sexual stereotypes?

6. Whether there is a causal link between Plaintiffs' allegations of sexual stereotyping harassment and any injury to them?

7. Whether the reasons given for Shoonover's termination were a pretext for covering up a discriminatory reason for his discharge?

11

8. Whether the reasons given for Shoonover's transfer to another store were a pretext for covering up a discriminatory reason for his transfer?

9. Whether Schoonover was transferred to another store based on his failure to conform to sexual stereotypes and/or because he complained about being discriminated against for failing to conform to sexual stereotypes or made other complaints?

10. Whether Rhea was transferred to another store and demoted based on his failure to conform to sexual stereotypes.

11. Whether the reasons given for Rhea's transfer and demotion were a pretext for covering up a discriminatory reason for such actions.

12. Whether Rhea was transferred to another store based on his failure to conform to sexual stereotypes and/or because he complained about being discriminated against for failing to conform to sexual stereotypes or made other complaints?

13. Whether Rhea felt the working conditions at Dollar Tree were so intolerable that he felt forced to resign.

14. Whether because of his failure to conform to sexual stereotypes Dollar Tree intentionally made Rhea's working conditions so intolerable that a reasonable person would feel forced to resign.

15. Whether Rhea's failure to conform to sexual stereotypes motivated Dollar Tree to make Rhea's working conditions so intolerable that a reasonable person would feel forced to resign.

16. Whether Rhea ever complained about being discriminated against based on his failure to conform to sexual stereotypes.

17. Whether Schoonover ever complained about being discriminated against based on his failure to conform to sexual stereotypes.

18. Whether Stephens told another to cut Rhea's work hours because he complained about being discriminated against for failure to conform to sexual stereotypes or made other complaints.

19. Whether the reasons given for Rhea's reduction in work hours were a pretext for covering up a discriminatory reason.

20. Whether Dollar Tree discharged Rhea.

21. Whether the Plaintiffs complaining about being discriminated against based on their failure to conform to sexual stereotypes or making other complaints was a substantial motivating factor in the Dollar Tree's decision to discharge one or both of them.

22. Whether any defamatory statements were made about the Plaintiffs by Donna Carlo.

23. Whether any alleged discriminatory comments made by Dollar Tree's employees were made within the scope of their employment.

24. Whether any alleged defamatory statements were true.

25. Whether Schoonover or Rhea suffered any actual damages as a result of any alleged defamatory statements.

26. Whether Plaintiffs suffered any damages as a result of discrimination or harassment based on their failure to conform to sexual stereotypes or retaliation due to their complaining about discrimination.

27. Whether Plaintiffs suffered any damages for pain and suffering caused by

13

unlawful events at the work place.

28. Whether Plaintiffs can establish "malice" on the part of any of the Defendants that would entitle the Plaintiff a right to claim punitive damages.

## VII. CONTESTED ISSUES OF LAW

**A.  Plaintiffs' Statement of Contested Issues of Law:**

1. Whether or not Plaintiffs were discriminated against based on sex.

2. Whether or not Plaintiffs were subject to a hostile work environment based on sex.

3. Whether or not Plaintiffs were retaliated against for reporting discrimination and harassment based on sex.

4. Whether or not Plaintiffs were retaliated against for filing an EEOC complaint.

5. Whether or not Plaintiffs were retaliated against for reporting unlawful activity.

**B.  Defendants' Statement of Contested Issues of Law:**

1. Whether Plaintiffs are estopped and barred from alleging in this action all matters under Title VII which were not the subject of a timely charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") that named Defendant Dollar Tree Stores, Inc.

2. Whether Plaintiffs are able to prove by a preponderance of the evidence that Defendant Dollar Tree Stores, Inc. discriminated against them because they failed to conform to sex stereotypes.

3. Whether Plaintiffs are able to prove by a preponderance of the evidence that the alleged discrimination was because of their failure to conform to sexual stereotypes.

14

4. Whether Plaintiffs are able to prove that Defendants discharged them because they complained about being discriminated against for failing to conform to sexual stereotypes.

5. Whether Plaintiffs are able to prove by a preponderance of the evidence that Defendants defamed them.

6. Whether Plaintiffs are able to prove by a preponderance of the evidence that they suffered damages as a result of any alleged defamation.

7. Whether Plaintiffs are able to prove by a preponderance of the evidence that Defendants discharged them in retaliation for complaining about discrimination.

8. Whether Plaintiffs are able to prove by a preponderance of the evidence that Defendant Dollar Tree Stores, Inc. created a hostile work environment based on their failure to conform to sexual stereotypes.

9. Whether Plaintiff Albert Rhea is able to prove by a preponderance of the evidence that Defendant Jim Stephens aided, abetted, incited, compelled, or commanded another to discriminate against him.

10. Whether Plaintiffs are able to show that they are entitled to an award of punitive damages in view of the criteria set out for punitive damages by the U.S. Supreme Court.

11. Whether Plaintiffs' claims for compensatory damages are barred because they are unsupported by economic and emotional harm.

12. Whether Plaintiffs' claims for punitive damages are barred because they cannot prove that Defendants acted with malice or reckless indifference relative to them.

13. To the extent Plaintiffs seek punitive damages, whether an award of punitive damages violates Defendants' right to procedural due process under the Fourteenth Amendment

to the United States Constitution and under the Constitution of the State of Tennessee; whether it violates Defendants' right to protection from "excessive fines" as provided in the Eighth Amendment to the United States Constitution and pertinent provisions of the Constitution of the State of Tennessee; and whether it violates Defendants' right to substantive due process as provided in the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Tennessee and, therefore, fails to state a cause of action supporting punitive damages.

14. Whether Plaintiffs as a matter of law have failed to comply with their duty to mitigate their damages, if any.

## VIII. EXHIBITS

**A.     Plaintiffs' Proposed Exhibits:**     None other than for impeachment or rebuttal.

Defendants' Objections:     Defendants reserve for trial objections to any exhibits offered by Plaintiffs.

**B.     Defendants' Proposed Exhibits:**

Defendants may seek to use at trial the exhibits listed on Exhibit A hereto, as well as any documents listed by Plaintiffs. Defendants reserve the right to use at trial any documents or things for rebuttal or impeachment purposes even if not listed on the attached list.

Plaintiffs' Objections:     Plaintiffs reserve for trial objections to any exhibits offered by Plaintiffs.

C. **Demonstrative Exhibits and Pictures, any Charts, Graphs, Diagrams, Models, or Similar Objects Intended to be Used in Opening Statements or Closing Arguments but not to be Offered in Evidence.**

The parties may use PowerPoint presentations, flip charts, and court equipment to draw diagrams, list facts, or show evidence in opening and closing statement. The parties reserve the right to make objections thereto at the appropriate time.

## IX. LIST OF WITNESSES

A. **Plaintiff's Witnesses:**

| | | |
|---|---|---|
| 1. | Albert Rhea | WILL |
| 2. | Gary Shoonover | WILL |
| 3. | Kaye Gustavus | WILL |
| 4. | Lashundra Lowe | WILL |
| 5. | Catina Jefferson | MAY |
| 6. | Tina Brown | MAY |
| 7. | Donna Carlo | MAY |

Plaintiffs reserve the right to call any witness listed by Defendants, as well as any witness not listed for purposes of rebuttal or impeachment.

OBJECTIONS:

1. The parties reserve any objections to the admissibility of all or parts of certain witnesses' testimony pursuant to Federal Rules of Evidence.

2. The parties object to any testimony offered through any witness who is not properly disclosed pursuant to Rule 26. The parties object as a preliminary matter to the listing of hearsay testimony of any witnesses and requests that the Court require both parties' counsel to

17

establish appropriate foundational facts before eliciting responses from any witness.

3. Further, while the parties will stipulate to the authenticity of certain documents, the parties will still require Plaintiffs to establish an evidentiary basis for the same.

**B.    Defendants' Witnesses**

Defendants may call at trial the witnesses listed on Exhibit A hereto, as well as any witnesses listed by Plaintiffs. Defendants reserve the right to call at trial any witnesses for rebuttal or impeachment purposes even if not listed on the attached list.

## X. DEPOSITION TESTIMONY

None in lieu of live testimony.

## XI. LENGTH OF TRIAL

The estimated length of trial is five (5) days.

## XII. NATURE OF TRIAL

This is a jury trial.

## XIII. DAMAGES

Plaintiffs seek $1,000,000. Defendants will seek appropriate costs and attorneys fees as a prevailing party.

## XIV. ATTORNEYS

The following attorneys are those interested in the case: Frederick J. Lewis, Craig A. Cowart, and William T. Winchester. Copies of the letterhead for each interested firm is attached hereto as Exhibit B.

## XV. SPECIAL EQUIPMENT

The only additional equipment Defendants anticipate bringing to the trial is lap top

18

computers.

This Pretrial Order is entered after a pretrial conference was conducted with counsel for all parties present. This Pretrial Order shall govern the trial of this action and supplant the pleadings. Counsel for all parties have agreed to this Pretrial Order.

Entered this 13 day of Oct , 2005.

_____
UNITED STATES DISTRICT COURT JUDGE

_____
Frederick J. Lewis (BPR #07859)
Craig A. Cowart (BPR #017316)
COUNSEL FOR DEFENDANTS

_____
William T. Winchester (BPR #21282)
COUNSEL FOR PLAINTIFFS

w/perm.
CAC

19

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 110 in case 2:04-CV-02254 was distributed by fax, mail, or direct printing on October 14, 2005 to the parties listed.

---

Craig Cowart
LEWIS FISHER HENDERSON & CLAXTON, LLP
6410 Poplar Ave.
Ste. 300
Memphis, TN 38119

Melissa Kimberly Hodges
LEWIS FISHER HENDERSON CLAXTON & MULROY
6410 Poplar Ave.
Ste. 300
Memphis, TN 38119

William T. Winchester
THE LAW OFFICES OF WILLIAM T. WINCHESTER
2600 Poplar Ave.
Ste. 507
Memphis, TN 38112

Frederick J. Lewis
LEWIS FISHER HENDERSON & CLAXTON, LLP
6410 Poplar Ave.
Ste. 300
Memphis, TN 38119

Honorable Jon McCalla
US DISTRICT COURT